This is a workmen's compensation case.
Reynolds Metals Company (employer) employed John B. Stults (employee) as an ironworker at its plant in Sheffield, Alabama for almost thirty years. Stults took a disability retirement on February 8, 1985. On January 22, 1986 Stults filed suit against Reynolds claiming workmen's compensation benefits under the occupational pneumoconiosis provisions of the Alabama Workmen's Compensation Act. §§ 25-5-140 through -152, Code 1975. Stults alleged exposure to asbestos during his employment. He further alleged that he currently suffers from asbestosis.
After extensive discovery, the case was tried ore tenus. On January 15, 1988 the trial court rendered judgment in favor of Stults based on a finding of forty-five percent permanent partial disability. The court determined that Stults had been exposed to asbestos during "a majority of those years" he worked for Reynolds and that his asbestosis was a work-related injury. Reynolds then brought this appeal.
Sections 25-5-140 through -152 of the Alabama Code govern claims for workmen's compensation benefits predicated on occupational pneumoconiosis with the exception of pneumoconiosis of coal miners. §§ 25-5-170 through -180, Code 1975. Asbestosis is a form of occupational pneumoconiosis. Reynolds contends on appeal that Stults has not fulfilled all the requirements necessary to recover benefits for occupational pneumoconiosis. We disagree and affirm the trial court. *Page 1037 
Reynolds first contends that Stults failed to prove that his asbestosis resulted from the nature of his employment as required by section 25-5-141. That section provides, in part:
 "In no case, however, shall an employer be liable for compensation by reason of the contraction of the disease of occupational pneumoconiosis, as defined in this article, or for disability or death resulting therefrom unless such disease arose out of and in the course of the employment and has resulted from the nature of the employment in which the employee was engaged under such employment. By `nature of employment' it is meant that as to the industry in which the employee was so engaged there is attached a particular hazard of such disease that distinguishes it from the usual run of occupations and is in excess of the hazards of such disease attending employment in general."
Thus, as to the nature of his employment, the employee must prove (1) a particular hazard of occupational pneumoconiosis, (2) that the hazard distinguished the employment from the usual run of occupations, and (3) that the hazard was in excess of the hazards of occupational pneumoconiosis attending employment in general. Nason v. Jones, 278 Ala. 532, 179 So.2d 281 (1965);United States Steel Corp. v. Danner, 263 Ala. 310, 82 So.2d 404
(1955). Stults met this burden of proof. Stults testified that he had been exposed to asbestos throughout his employment with Reynolds. The maintenance supervisor of Reynolds's plant corroborated this testimony as to a significant portion of Stults's employment. A physician specializing in pulmonary diseases testified on deposition that Stults's lung disease was asbestos-related. He further testified to the dangers of breathing asbestos fibers.
We hold that this proof was sufficient to meet the requirements of section 25-5-141. Although occupational or vocational expert testimony is desirable in a pneumoconiosis case, United States Steel v. Danner, supra, failure to present such testimony is not fatal to the claim. In Woodward Iron Co.v. King, 268 Ala. 680, 110 So.2d 270 (1959), the Alabama Supreme Court held proof of exposure to dust and silica "probably about 40 percent of [the] time" sufficient to show the employee's work exposed him to a greater risk of pneumoconiosis than did employment in general. In the case at bar, proof that the employee regularly worked around asbestos, coupled with medical testimony that breathing asbestos fibers increases the likelihood of pneumoconiosis, is sufficient to show the disease resulted from the nature of the employment as required by section 25-5-141. Therefore, the trial court's finding that Stults's asbestosis resulted from the nature of his employment must be affirmed.
Reynolds's second contention is that Stults failed to file his claim within the one-year time period allowed for the filing of occupational pneumoconiosis cases. Section 25-5-147 provides that all claims for compensation in such cases must be filed within one year of the date of the injury. For purposes of section 25-5-147, date of the injury means:
 "[T]he date of the last exposure to the hazards of the disease in the employment of the employer in whose employment the employee was last exposed, within a period of five years prior to the date of the injury, to the hazards of the disease in each of at least 12 months."
Failure to discover the pneumoconiosis does not toll the statute of limitations. Nason v. Jones, supra.
Stults filed his claim on January 22, 1986. Under section 25-5-147, an employee must file his claim within one year after the date of the injury, defined as the date the employee was last exposed to the hazards of the disease, in this case asbestos. Therefore, unless Stults's last exposure to asbestos occurred on or after January 22, 1985, his claim is barred by the statute of limitations. Stults testified that he had worked with asbestos up until his final day on the job (February 8, 1985). Reynolds presented evidence that it had removed all asbestos from its Sheffield plant in 1975 or 1976. The trial court found Stults had *Page 1038 
worked around and/or handled asbestos for "a majority of those years" during which he worked for Reynolds. The court made no specific finding as to whether Stults had been exposed to asbestos between January 22, 1985 (one year before he filed his claim) and February 8, 1985 (the day he retired). Reynolds contends that in finding Stults had been exposed to asbestos for "a majority of those years" the court rejected Stults's testimony that he had been exposed to asbestos throughout his employment. In Reynolds's view, the court then misapplied the law to its finding of fact in that it failed to apply the statute of limitations.
In response Stults argues the trial court must have intended its finding that he had been exposed to asbestos for a "majority" of his employment to include the critical period from January 22, 1985 to February 8, 1985. Otherwise the court would have applied the statute of limitations and denied benefits. We agree with Stults. We cannot say the trial court ignored the statute of limitations, particularly in light of the fact that Reynolds raised the issue as an affirmative defense in its answer. Stults's testimony supported a finding that he had been exposed to asbestos during the critical period. The court implicitly found he had been exposed to asbestos during this period, else it would have held his claim to be barred by the statute of limitations. Because there is legal evidence to support this finding, we must affirm the trial court. Washington v. Warrior Tractor Equipment Co.,487 So.2d 1371 (Ala.Civ.App. 1986).
Finally, Reynolds asserts that the trial court erred in failing to apply section 25-5-58, in that Stults suffered from a preexisting infirmity. Section 25-5-58 provides:
 "If the degree or duration of disability resulting from an accident is increased or prolonged because of a pre-existing injury or infirmity, the employer shall be liable only for the disability that would have resulted from the accident had the earlier injury or infirmity not existed."
Section 25-5-58 applies in occupational pneumoconiosis cases. § 25-5-152, Code 1975. Reynolds presented evidence that Stults suffered from arteriosclerotic heart disease for which he had triple bypass surgery in 1978 and from aseptic necrosis for which he had a left hip replacement in 1983. Additional evidence showed Stults had been diagnosed with chronic obstructive pulmonary disease, possibly caused by cigarette smoking, as early as 1979. Reynolds argues these preexisting conditions rendered Stults totally disabled, regardless of any asbestosis he currently suffers.
Section 25-5-58 does not limit the payment of workmen's compensation benefits to those in perfect health prior to the compensable injury. Ex parte Lewis, 469 So.2d 599 (Ala. 1985). A preexisting condition will not affect a workmen's compensation award if a job-related injury combined with that preexisting condition to produce disability. Blue Bell, Inc. v.Nichols, 479 So.2d 1264 (Ala.Civ.App. 1985). Stults testified that he continued to work for Reynolds, though at a lighter job, after his bypass surgery and his hip replacement. If an employee was able to perform his duties prior to the subject injury, no preexisting condition is present for compensation purposes. International Paper Co. v. Rogers, 500 So.2d 1102
(Ala.Civ.App. 1986).
The physician who treated Stults's asbestosis testified that Stults suffered a sixty-five percent impairment to the body as a whole based on his reduced pulmonary function alone. He further testified that this impairment was, at least in part, due to asbestosis. This testimony supports the trial court's finding that Stults's asbestosis caused a forty-five percent loss of earning capacity. The evidence showed Stults had been declared totally disabled by the Social Security Administration and is currently unable to work. In other words, his present loss of earning capacity is one hundred percent. There was legal evidence to support the trial court's determination that forty-five percent of this loss of earning capacity was attributable to asbestosis. The court did not hold Reynolds liable for all of Stults's disability, but only for that portion of the disability which the court determined "would have resulted from the *Page 1039 
accident had the earlier injury or infirmity not existed." §25-5-58, Code 1975. Legal evidence supports this finding. Therefore, we must affirm. Michael v. Bruno's Food Stores,Inc., 506 So.2d 342 (Ala.Civ.App. 1986).
None of Reynolds's contentions warrants reversal; hence, the judgment of the trial court is affirmed.
AFFIRMED.
HOLMES and INGRAM, JJ., concur.